## JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001.2113

TELEPHONE: +1.202.879.3939 • FACSIMILE: +1.202.626.1700

Direct Number: (202) 879-7686
CDIPOMPEO@JONESDAY.COM

April 12, 2021

VIA CM/ECF

Catherine O'Hagan Wolfe, Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

>     Re: *Clinton Nurseries, Inc. v. Harrington (In Re: Clinton Nurseries, Inc.)*,
>     Case No. 20-1209 (argument held October 23, 2020 before the
>     <u>Honorable Circuit Judges Raggi, Sullivan, and Nardini)</u>

Dear Ms. Wolfe:

We write on behalf of *amicus curiae* MF Global[1] pursuant to F.R.A.P. 28(j) to join in Appellant's letter (ECF 94) apprising this Court of the recent decision in *USA Sales, Inc. v. Office of the United States Trustee*, Case No. 5:19-CV-02133-JWH, 2021 WL 1226369 (C.D. Cal. Apr. 01, 2021) (Ex. A hereto).

This decision analyzes the same uniformity issues at the heart of this appeal (*see* ECF 52), and concludes: (i) the 2017 Amendment is a law on the subject of bankruptcies (ECF 52 at 3-5; Ex. A at *2, *15); (ii) the 2017 Amendment is unconstitutionally non-uniform because it revives the "'irrational and arbitrary'" dual fee structure for BA Districts and UST Districts found unconstitutional in *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir. 1994) (Ex. A at *16-18; ECF 52 8-9); (iii) the geographical disparity cannot be justified by the UST Districts' funding shortfall since "[s]uch a narrow construction of the statute fails to address why Chapter 11 debtors in UST Districts are required to use the UST in the first place" (Ex. A at *17; ECF 52 19-24); and (iv) the word "may" as enacted in 28

---

[1] Capitalized terms have the meaning in MF Global's *amicus curiae* brief, ECF 52.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Catherine O'Hagan Wolfe, Clerk of Court
April 12, 2021
Page 2


U.S.C. § 1930(a)(7) is clearly permissive, not mandatory.  Ex. A at *17-18; ECF 52 16-19.

The decision also addresses new amendments to 28 U.S.C. § 1930, themselves the subject of the Government's Rule 28(j) letter dated January 13, 2021 (ECF 92), in the *Bankruptcy Administration Improvement Act of 2020*, S. 4996 (116th Cong.), Pub. L. No. 116-325, January 12, 2021, 134 Stat. 5085 ("2020 Act" or "2021 Amendment").  The 2021 Amendment replaces the 2017 Amendment's quarterly fee schedule for disbursements beginning Q2 2021 (2020 Act at § 2(e)(2)(B)). Mirroring arguments MF Global makes in the opening brief of its appeal (Case No. 20-3863, ECF 35 at 23-25, 32-35), the *USA Sales* decision concludes that the 2021 Amendment's new provisions (absent from the 2017 Amendment) further demonstrate that the 2017 Amendment is neither retroactively applicable nor constitutionally uniform.  *E.g.,* Ex. A at *8, *14 & n. 46.

We respectfully request that you share this letter with the panel.

Sincerely,

*/s/  Christopher DiPompeo*
Christopher DiPompeo
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
cdipompeo@jonesday.com

*Counsel for amicus curiae MF Global
   Holdings Ltd., as Plan Administrator*


cc: Counsel of record (*via* CM/ECF)

**EXHIBIT A**

2021 WL 1226369
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

USA SALES, INC., Plaintiff,
v.
OFFICE OF THE UNITED STATES TRUSTEE,
Defendant.

Case No. 5:19-cv-02133-JWH-KKx
|
Filed 04/01/2021

**West Codenotes**

**Unconstitutional as Applied**
🚩 28 U.S.C. § 1930(a)(6)

**MEMORANDUM OPINION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT [ECF Nos. 25 & 26]**

John W. Holcomb UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

**\*1** The filing of a bankruptcy petition is a significant legal event, with dramatic and far-reaching consequences. A debtor's voluntary and affirmative act of filing that petition commences its bankruptcy case and constitutes the entry of an order for relief under the Bankruptcy Code.[1]

The debtor's bankruptcy rights, duties, and obligations commence the instant it files that petition. For example, a bankruptcy estate is established at that moment, the *res* of which consists of all of the debtor's real and personal property—tangible and intangible—and the debtor's equitable interests in property. The bankruptcy automatic stay also springs into existence, preventing creditors from taking any action to enforce a pre-petition debt against the debtor or the bankruptcy estate. Actions taken in violation of the automatic stay are not merely voidable; they are void. If the debtor files its petition under Chapter 11 of the Bankruptcy Code, the debtor transforms into a new

legal entity—a debtor in possession—with all of the rights and duties of a bankruptcy trustee.

In sum, a debtor's entry into bankruptcy transports it into another legal realm; the debtor is like Lewis Carroll's Alice, stepping through the looking-glass.[2] The debtor, and other parties in interest, find that many new rules apply, and the old rules apply in different ways, or sometimes not at all. The instant case, which concerns the obligation of a Chapter 11 debtor to pay quarterly fees to the Office of the United States Trustee (the "UST"), turns upon the fundamental bankruptcy concept that the act of commencing a bankruptcy case carries important consequences, which inform the Court regarding how it should interpret the Chapter 11 quarterly fee statute.

In May of 2016, Plaintiff USA Sales, Inc. commenced a case under Chapter 11 of the Bankruptcy Code, and, thus, became a Chapter 11 debtor and debtor in possession. When USA Sales filed its bankruptcy petition, the relevant statute—🚩 28 U.S.C. § 1930(a)(6)—capped the fees payable by a Chapter 11 debtor at $30,000 per quarter. In late 2017, Congress amended that statute to provide an additional schedule for calculating quarterly fees during fiscal years 2018 through 2022 (the "2017 Amendment").[3] Under the amended statute, Chapter 11 debtors whose disbursements exceeded $1 million in any quarter were required to pay the lesser of $250,000 or 1% of the debtor's total quarterly disbursements. Beginning on January 1, 2018, the UST calculated quarterly fees according to the amended statute in new ***and pending cases***. The application of the new quarterly fee schedule to cases that were commenced before the amendment's enactment resulted in a significant increase in the quarterly fees owed by the debtors in those cases. In USA Sales' case, for example, its fees increased from $13,000 per quarter before the 2017 Amendment to an average of about $87,493 per quarter for the years 2018 through 2019 under the amended schedule.[4] USA Sales was in bankruptcy from May 20, 2016, until November 7, 2019, when the bankruptcy court dismissed the case pursuant to the terms of a structured dismissal negotiated by USA Sales and its creditors.[5]

**\*2** USA Sales commenced this district court case on November 6, 2019.[6] In its operative Complaint, USA Sales asserts two claims for relief against the UST, through which it seeks a refund of the excess amount of quarterly fees that it believes the UST assessed against it under the 2017 Amendment. In its first claim for relief, USA Sales challenges the constitutionality of the 2017 Amendment, as applied to pending Chapter 11 cases.[7] In its second claim for relief, USA Sales alleges that, as a

matter of statutory interpretation, the 2017 Amendment should not have been applied to USA Sales' Chapter 11 case.[8]

Before the Court are cross-motions for summary judgment filed by Defendant UST,[9] on the one hand, and Plaintiff USA Sales,[10] on the other (jointly, the "Motions").[11] The material facts are undisputed. The Motions present two primary questions:

1. As a matter of statutory interpretation, does 🚩 28 U.S.C. § 1930(a)(6)(B) apply to debtors in Chapter 11 cases that were commenced before the date of enactment of the 2017 Amendment?

2. If 🚩 28 U.S.C. § 1930(a)(6)(B) properly applies to pending cases, then is the 2017 Amendment unconstitutional, as applied to USA Sales?[12]

Having considered these questions, the Court concludes that the plain text of 🚩 28 U.S.C. § 1930(a)(6), subparagraph (B), as amended in 2017, does **not** apply to Chapter 11 cases that were commenced prior to the effective date of the 2017 Amendment. Therefore, the UST wrongly applied the 2017 Amendment to USA Sales' distributions in fiscal years 2018 and 2019. As an alternative ground for decision, the Court further concludes that the 2017 Amendment is a non-uniform law on the subject of bankruptcies, and, therefore, it is unconstitutional. Accordingly, the Court will **GRANT in part**, and **DENY in part**,[13] the Motion of USA Sales, and will **DENY** the Motion of the UST.[14]

## II. BACKGROUND

### A. The United States Trustee Program and 🚩 28 U.S.C. § 1930

**\*3** In 1978, Congress launched the UST pilot program to assist bankruptcy judges with the administrative functions of bankruptcy. *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549, 2662–65 (1978). Under that program, Congress transferred bankruptcy administrative duties to USTs in the Department of Justice. The USTs "were given responsibility for many administrative functions, such as appointing private trustees and monitoring their performance, and monitoring cases for signs of fraud or abuse." 🚩 *In re Prines*, 867 F.2d 478, 480 (8th Cir. 1989). The pilot program was largely successful, and, in 1986, Congress made the UST

program permanent. *See* Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554, 100 Stat. 3088, 3090–95 (1986).

Not every judicial district, however, participates in the UST program; out of the 94 judicial districts nationwide, only 88 participate in the program ("UST Districts"). *See* 🚩 28 U.S.C. § 581(a). Six districts in Alabama and North Carolina instead participate in the Bankruptcy Administrator program ("BA Districts"), which the Judicial Conference oversees. *See* Federal Courts Improvements Act of 2000, Pub. L. No. 106-518 § 501, 114 Stat. 2410, 2421 (2000); *see also Matter of Buffets, L.L.C.*, 979 F.3d 366, 370 (5th Cir. 2020).

One of the primary differences between the two programs involves funding; each is funded through a different source. The administrator program in BA Districts is funded through the judiciary's general budget. *Buffets*, 979 F.3d at 371. The UST program, although technically funded by annual appropriations, is designed so that its cost is offset by fees paid by debtors. *See* Consolidated Appropriations Act of 2019, Pub. L. No. 116-6, div. C., tit. II, 133 Stat. 13, 103-04 (2019). Those fees include Chapter 11 quarterly fees. 🚩 28 U.S.C. § 1930(a)(6); *see also id.* § 589a.

When the quarterly fee program was first implemented, debtors in BA Districts were not required to pay quarterly fees, whereas debtors in UST Districts were. This disparity resulted in a challenge to the constitutionality of the quarterly fee statute. In 🏴 *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir. 1994), *amended by* 🏴 46 F.3d 969 (9th Cir. 1995), the Ninth Circuit held that Congress' decision to impose quarterly fees in UST Districts, but not in BA Districts, violated the Bankruptcy Clause of the Constitution. *See* 🏴 *id.* at 1529, 1531–32. In response to that decision, Congress amended 🚩 28 U.S.C. § 1930(a) to authorize the Judicial Conference to charge quarterly fees "equal to those imposed" in UST Districts. 🚩 28 U.S.C. § 1930(a)(7). Shortly thereafter, the Judicial Conference accepted this authorization and adopted the schedule of quarterly fees that were assessed in UST Districts (*i.e.*, the fees prescribed by 🚩 28 U.S.C. § 1930(a)(6)). *See Buffets*, 979 F.3d at 371 (citation omitted) (the Judicial Conference adopted fees "in the amounts specified in 🚩 28 U.S.C. § 1930, as those amounts may be amended from time to time").

Before October 2017, 🚩 28 U.S.C. § 1930(a) provided, in pertinent part:

(a) The parties commencing a case under title 11 shall pay to the clerk of the district court or the clerk of the bankruptcy court ... the following filing fees:

\* \* \*

(6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11, other than under subchapter V, for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $325 for each quarter in which disbursements total less than $15,000; ... $13,000 for each quarter in which disbursements total $5,000,000 or more but less than $15,000,000 .... The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.[15]

**\*4** 28 U.S.C. § 1930(a)(6) (2012).

Due to a decline in bankruptcy filings, by the mid-2010s, the UST program funding was no longer being offset by debtor-paid fees. *See Buffets*, 979 F.3d at 371. Therefore, in late 2017, Congress amended 28 U.S.C. § 1930(a)(6) by striking "(6) In" and inserting "(6)(A) Except as provided in subparagraph (B)" and adding the following subparagraph:

(B) During each of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund as of September 30 of the most recent full fiscal year is less than $200,000,000, the quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1 percent of such disbursements or $250,000.

Bankruptcy Judgeship Act of 2017 ("2017 BJA"), Pub. L. No. 115-72, Div. B, § 1004(a), Oct. 26, 2017, 131 Stat. 1232 (codified as amended at 28 U.S.C. § 1930 (2018)).

In UST Districts, the 2017 Amendment was applied to all Chapter 11 cases where disbursements were made on or after January 1, 2018 (the first quarter in which the 2017 Amendment applied). *See Buffets*, 979 F.3d at 372. Consequently, qualifying debtors in UST Districts faced a substantial increase in their Chapter 11 quarterly fees. *Id.* The Judicial Conference, however, did not adopt the amended fee schedule until September 2018. *Id.* And when the Judicial Conference finally adopted the amended fee schedule, the increased fees applied only to cases in BA Districts "filed on or after October 1, 2018." *Id.* (citation omitted). In other words, a debtor in a BA District "that filed for bankruptcy before the final quarter of 2018 does not owe the increased fees no matter how long the case remains pending," *id.*, whereas all qualifying Chapter 11 debtors in UST Districts were assessed the increased fees—even debtors in cases commenced before the 2017 Amendment was enacted.

**B. USA Sales' Chapter 11 Bankruptcy Case**

USA Sales is a distributor and manufacturer of tobacco and cigarette products, including private labeling for tobacco, e-cigarette, and hookah products.[16] On May 20, 2016, USA Sales filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition").[17] USA Sales' Petition was precipitated by an order for a writ of attachment against USA Sales in a state court lawsuit[18] and by the death of USA Sales' principal, shareholder, officer, and director: Kabirrudin Ali.[19]

The bankruptcy court dismissed USA Sales' bankruptcy case on November 7, 2019, pursuant to the terms of a structured dismissal.[20] During its three-and-a-half-year life, USA Sales' bankruptcy case included litigation contesting the legitimacy and amounts of two claims asserted by the California Department of Tax and Fee Administration (the "CDTFA"): (1) a priority claim under 11 U.S.C. § 507(a)(8) for pre-Petition excise taxes in the total amount of $1,505,639.57, which the bankruptcy court allowed as a general unsecured claim after it sustained USA Sales' objection to the claim's priority status;[21] and (2) a separate administrative expense claim for post-Petition periods in the total amount of $1,424,583.88, which USA Sales disputed.[22] In January 2018, USA Sales and the CDTFA began settlement discussions, and they eventually reached a global settlement a year later, contingent upon USA Sales negotiating a structured dismissal with its remaining creditors, which it did.[23]

**\*5** During its Chapter 11 case, USA Sales was required to pay quarterly fees to the UST. From the Petition date until January 1, 2018, USA Sales' total quarterly disbursements ranged from $5,000,000 to $14,999,999; thus, USA Sales' paid a maximum of $13,000 per quarter to the UST, according to the fee schedule that was in

effect on the Petition date.[24] Beginning in the first quarter of 2018 through the fourth quarter of 2019, the UST calculated USA Sales' quarterly fees according to the 2017 Amendment, which resulted in USA Sales paying an average quarterly fee of $87,493.[25] In total, for the first quarter of 2018 through the fourth quarter of 2019, USA sales paid an additional $595,849 in quarterly fees that it would not have paid under the fee structure in effect on the Petition date.[26] For the period from the Petition date to January 1, 2018, USA Sales' net profit was $193,049.[27] For the period from January 1, 2018 through the dismissal of USA Sales' Chapter 11 case, USA Sales had a net loss of $504,811.[28]

Here, USA Sales challenges the application of the 2017 Amendment to its Chapter 11 case. Specifically, USA Sales seeks the recovery of the additional amount of quarterly fees that it paid after January 1, 2018, as a consequence of the UST's application of the 2017 Amendment.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The substantive law determines the facts that are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are "irrelevant or unnecessary" are not counted. *Id.* A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under this standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. *Id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

**\*6** If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252). The non-moving party must make this showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

### IV. DISCUSSION

#### A. Application of the 2017 Amendment to Chapter 11 Cases Commenced Before the Date of Enactment

USA Sales first argues that the 2017 Amendment should be interpreted as applying only to cases filed after the date of enactment of that Amendment.

It is a well-established principle "that legislation is to be applied prospectively unless Congress specifies otherwise." *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 842 (1990) (Scalia, J., concurring); *see also United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982) (the "first rule of construction is that legislation must be considered as addressed to the future, not to the past" (quoting *Union Pacific R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199 (1913)). Principles of fundamental fairness require the opportunity

for individuals to "know what the law is" so that they can "conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). When parties' expectations are settled based upon prior law, those expectations "should not be lightly disrupted." *Id.* Thus, the first question in deciding whether a statute should have retroactive application is "whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280. If Congress has not commanded retroactive application, then "the court must determine whether the new statute would have retroactive effect." *Id.* Retroactive effect arises when a statute "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." *Id.*

A cardinal rule of statutory interpretation is that when a statute is reasonably susceptible to two possible constructions, one of which raises serious questions of constitutionality, the statute should be interpreted in a way that avoids placing its constitutionality in doubt. *See Gomez v. United States*, 490 U.S. 858, 872 (1989); *Crowell v. Benson*, 285 U.S. 22, 62 (1932); *United States ex rel. Attorney Gen. v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909); *see also* ANTONIN SCALIA & BRIAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 247–51 (2012).

In the context of this case, the Court must decide whether the 2017 Amendment is (impermissibly) retroactive as applied to cases that were commenced before the Amendment's enactment date, or whether the 2017 Amendment is expressly prospective, because it applies to future "disbursements." The UST contends that 28 U.S.C. § 1930(a)(6), as amended in 2017, is expressly prospective, not retroactive. In support of its interpretation, the UST points out that 28 U.S.C. § 1930(a)(6)(B) plainly states that the statute applies "[d]uring each of fiscal years 2018 through 2022."[29] The UST also relies upon the "application" provision of 2017 Amendment, which provides:

**\*7** The amendments made by this section shall apply to quarterly fees payable under section 1930(a)(6) of title 28, United States Code, as amended by this section, for disbursements made in any calendar quarter that begins on or after the date of enactment of this Act.

2017 BJA, Pub. L. No. 115-72, § 1004(c).[30]

USA Sales responds that the language upon which the UST relies does not expressly state that the 2017 Amendment applies to disbursements in Chapter 11 cases that were pending as of the date of enactment.[31] Thus, according to USA Sales, the making of disbursements is not determinative of the applicability of the 2017 Amendment; rather, the 2017 Amendment should apply only to cases filed on or after the date of enactment.

This appears to be an issue of first impression in the Ninth Circuit. Most courts that have considered the 2017 Amendment, including the Fifth Circuit, agree with the UST's position that the amendment applies to "disbursements" in all Chapter 11 cases, including cases that were pending on the date of its enactment. *See Buffets*, 979 F.3d at 374; *M.F. Global Holdings Ltd. v. Harrington (In re MF Global Holdings)*, 615 B.R. 415, 429–30 (Bankr. S.D.N.Y. 2020); *In re Exide Techs.*, 611 B.R. 21, 26–27 (Bankr. D. Del. 2020); *In re Mosaic Mgmt. Grp., Inc.*, 614 B.R. 615, 621–22 (Bankr. S.D. Fla. 2020), *appeal pending sub. nom Smith v. Gargulla*, No. 20-90012-E (11th Cir.); *In re Clayton Gen., Inc.*, No. 15-64266 2020 Bankr. LEXIS 842, at \*9–14 (Bankr. N.D. Ga. Mar. 30, 2020); *Clinton Nurseries, Inc. v. Harrington (In re Clinton Nurseries, Inc.)*, 608 B.R. 96, 111 (Bankr. D. Conn. 2019), *appeal pending*, No. 20-1209 (2d Cir.). Surprisingly, though, these courts have interpreted subparagraph (B) in isolation; that is, without considering the preceding language in 28 U.S.C. § 1930(a)—"commencing a case"—which defines the relevant conduct that gives rise to the obligation to pay quarterly fees in the first instance. Before addressing that point, however, the preliminary question facing the Court is whether Congress "expressly prescribed" the 2017 Amendment's proper reach. *Landgraf*, 511 U.S. at 280.

### 1. Absence of Any Express Command for Retroactive Application

There is nothing in the text of the 2017 Amendment that demonstrates a "clear congressional intent," "unambiguous directive," or "express command" that the statute is to be applied retroactively, *see id.*; that is, retroactively to disbursements in Chapter 11 cases that were pending when Congress enacted the 2017 Amendment.[32] As set forth above, the 2017 Amendment's reference to disbursements in any quarter during fiscal

years 2018 through 2022 is as follows:

> The amendments made by this section shall apply to quarterly fees payable under section 1930(a)(6) of title 28, United States Code, as amended by this section, for disbursements made in any calendar quarter that begins on or after the date of enactment of this Act.

2017 BJA, Pub. L. No. 115-72, § 1004(c). If Congress had wanted the 2017 Amendment to have retroactive effect, it could instead have made an unambiguous statement such as: *The new provisions shall apply to all bankruptcy cases pending on the date of enactment and to cases commenced on or after the date of enactment. Cf.* 🚩 *Landgraf*, 511 U.S. at 260 (suggesting language to similar effect). It did not. Congress is undoubtedly aware that it must explicitly state its intent if it wanted the 2017 Amendment to apply retroactively to pending cases, because it did so in amendments made under other sections of the 2017 BJA.

**\*8** For example, in the effective date provision for the amendments to 🚩 11 U.S.C. § 1222, Congress unambiguously stated that the amendments applied "to—(1) any bankruptcy case—(A) that is pending on the date of enactment of this Act ..." and "(2) any bankruptcy case that commences on or after the date of enactment of this Act." 2017 BJA, Pub. L. No. 115-72, § 1005(c) (amending Chapter 12 of the Bankruptcy Code). As a general rule, it is presumed that " 'Congress acts intentionally and purposely' when it 'includes particular language in one section of a statute but omits it in another.' " *City of Chicago v. Environmental Defense Fund*, 511 U.S. 328, 338 (1994) (quoting 🚩 *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)). Thus, Congress' decision to include an express command in other sections of the 2017 BJA militates against a retroactive interpretation of the 2017 Amendment to pending cases.[33]

The Court's conclusion is further supported by the fact that Congress made its intent clear in prior amendments to 🚩 28 U.S.C. § 1930(a); specifically, in amendments made after much disagreement over whether the statute applied retroactively. In 1996, Congress amended 🚩 28

U.S.C. § 1930(a) to require Chapter 11 debtors to pay quarterly fees beyond plan confirmation until the case was dismissed or converted (in contrast, the original statute required debtors to pay quarterly fees only until a plan was confirmed). *Buffets*, 979 F.3d at 374. When those amendments spawned disagreement among courts over whether debtors in pending cases with confirmed plans could be assessed post-confirmation quarterly fees, *see In re Huff*, 207 B.R. 539, 541 (Bankr. W.D. Mich. 1997) (examining these cases), Congress passed legislation later the same year clarifying that "notwithstanding any other provision of law, the fees under 🚩 28 U.S.C. § 1930(a)(6) shall accrue and be payable from and after January 27, 1996, *in all cases (including, without limitation, any cases pending as of that date)*, regardless of confirmation status of their plan," Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 109(d), 110 Stat. 3009, 3009–19 (1996) (emphasis added).

Congress' recent amendments to 🚩 28 U.S.C. § 1930(a)(6) underscore the absence of any express command by Congress that the 2017 Amendment was to apply retroactively.[34] The Bankruptcy Administration Improvement Act of 2020, Pub. L. No. 116-325, January 12, 2021, 134 Stat. 5085 (the "2020 Act"), amended 🚩 28 U.S.C. § 1930(a)(6), among other provisions. As relevant here, the 2020 Act states that the amendments made to 🚩 28 U.S.C. § 1930(a)(6) "shall apply to ... any case pending under chapter 11 of title 11, United States Code, on or after the date of enactment of this Act ...." 2020 Act § 3(d)(B). The 2020 Act is, thus, unambiguous that the amendments that it makes to 🚩 28 U.S.C. § 1930(a)(6) are to apply retroactively to cases pending on the date of enactment. Yet, no such express command is present with respect to the applicability of the 2017 Amendment to pending cases.

**\*9** Accordingly, because the Court finds that Congress did not explicitly prescribe the reach of the 2017 Amendment, the Court must determine whether the 2017 Amendment has retroactive effect. 🚩 *Landgraf*, 511 U.S. at 280.

### 2. Retroactive Effect

A statute does not operate retroactively merely because it is applied in a case arising from conduct before the statute's enactment or because it upsets expectations based in prior law. *Id.* at 269. The standard is more exacting: the court must ask whether the amended statute

"attaches new legal consequences to events completed before its enactment." *Id.* at 269–70. "The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at 270. In the instant case, this question requires the Court to determine what conduct triggers the increased fees under the 2017 Amendment: "commencing a case," 28 U.S.C. § 1930(a), or "disbursements," *id.* § 1930(a)(6)(B).

The Fifth Circuit and most bankruptcy courts have focused on the term "disbursements" in 28 U.S.C. § 1930(a)(6)(B) as the conduct that triggers the application of the amended fee schedule. For example, in holding that the 2017 fee increase did not have retroactive effect, the Fifth Circuit in *Buffets* reasoned that the fee increase "applies only to future disbursements, which are triggered by a debtor's conduct—making payments—occurring after the law's effective date." *Buffets*, 979 F.3d at 375 (citing *F.D.I.C. v. Faulkner*, 991 F.2d 262, 266 (5th Cir. 1993) (noting that date of the conduct is the relevant inquiry)). "[N]ew disbursements," according to the Fifth Circuit panel majority, "not new cases, trigger the higher fees." *Id.*

But, as previously noted, the panel in *Buffets* did not consider the preceding language, "commencing a case," in subsection (a) of 28 U.S.C. § 1930, which sets the prerequisite condition for the application of the subsequent enumerated paragraphs, including paragraph (6). "Statutory construction is a 'holistic endeavor.' " *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988)). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n*, 484 U.S. at 371. Subparagraph (B) of 28 U.S.C. § 1930(a)(6), read in isolation, is ambiguous as to whether it applies to disbursements in cases commenced before the date of enactment. That is, the subject of subparagraph (B) is "disbursements," but its text does not specify in which cases it applies. Subsection (a) resolves that ambiguity. The text and structure of the statute plainly require subparagraph (B) to be read in conjunction with the language in the preceding subsection (a).

Read together with its constituent parts, 28 U.S.C. § 1930(a) makes clear that the act of "commencing a case" under Chapter 11 is the conduct to which liability attaches. In other words, but for the commencement of a case under Chapter 11, there is no liability for Chapter 11 quarterly fees attached to disbursements made in the ordinary course of business. Thus, whether the 2017 Amendment applies to a particular case depends upon when the case was commenced, not when the disbursements are made (because the disbursements are already contemplated by the statute at the time of filing). Focusing on disbursements as the relevant conduct would render the phrase "commencing a case" in 28 U.S.C. § 1930(a) superfluous. *See* *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

**\*10** When a term has an accepted meaning in the area of law addressed by a statute, the term is considered a technical term or term of art. In such circumstances, the accepted meaning of the term governs. *See* *Sullivan v. Stroop*, 496 U.S. 478, 483 (1990) (a term appearing in inter-related statutory programs must be read the same way each time it appears); *see also* *Dewsnup v. Timm*, 502 U.S. 410, 420–23 (1992) (Scalia, J., dissenting) (explaining that the term "allowed secured claim" in § 506(d) of the Bankruptcy Code is a term of art that bears the same meaning throughout the statute). As Justice Jackson once explained:

> [W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.

*Morissette v. U.S.*, 342 U.S. 246, 263 (1952). Here, the

term "commence" is a term of art in the bankruptcy context, and Congress' use of that term in 28 U.S.C. § 1930(a) is, therefore, significant.[35]

The Bankruptcy Code defines the "commencement of a case" to be "the filing with the bankruptcy court of a petition" under a chapter of the Bankruptcy Code by an eligible debtor. 11 U.S.C. § 301(a). Section 301(b) further provides that the filing of a bankruptcy petition constitutes "an order for relief." The order for relief immediately triggers the imposition of the automatic stay under 11 U.S.C. § 362, the creation of the bankruptcy estate under 11 U.S.C. § 541, and numerous other processes and deadlines for the administration of the estate and the bankruptcy case. The "petition date," therefore, "is a critical point of time that establishes and measures various rights and obligations of various parties under the Bankruptcy Code." DANIEL J. BUSSEL & DAVID A. SKEEL, JR., BANKRUPTCY 26 (10th ed. 2015).

In the context of 28 U.S.C. § 1930(a), Congress' use of the term "commence"—in its present participle form "commencing"—is a significant element of plain meaning. *See* *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003) (plain text interpretation derived from use of present tense of a verb); *Ingalls Shipbuilding v. Director, OWCP*, 519 U.S. 248, 255 (1997) (to similar effect). "Commencing" in the bankruptcy context plainly means that the petition date is the relevant point at which the terms of a Chapter 11 debtor's obligation to pay quarterly fees to the UST under 28 U.S.C. § 1930(a)(6) are defined. The importance of the phrase "commencing a case" is underscored when considered in view of how Chapter 11 quarterly fees fit into the Bankruptcy Code's process of administration.

The default rule in Chapter 11 is that the debtor will continue its business operations postpetition, as a debtor in possession. *See* 11 U.S.C. §§ 1107 & 1108; *see also id.* § 363(c) (authorizing the debtor in possession to use all property of the estate, except for cash collateral, in the ordinary course of business). A Chapter 11 debtor, in other words, will always make some amount of quarterly disbursements for the duration of its bankruptcy case. And in this sense, a Chapter 11 debtor's disbursements are not new conduct to which legal consequences attach—the disbursements are a mere fulfillment of that which is already contemplated by the Bankruptcy Code and 28 U.S.C. § 1930(a)(6). Indeed, the Bankruptcy Code classifies Chapter 11 quarterly fees as a priority administrative expense. *See* 11 U.S.C. § 507(a)(2); *see*

*also* *Mosaic*, 614 B.R. at 623 (explaining that 28 U.S.C. § 1930(a)(6) "creates a claim that arises only in bankruptcy cases, in favor of the UST, an entity that exists solely to participate in bankruptcy cases," and the "amount of the fee due to the UST directly impacts distributions to other creditors"). The Bankruptcy Code also requires a Chapter 11 plan to provide for the full payment of quarterly fees, along with other priority administrative expense claims on the effective date of the plan. *See* 11 U.S.C. § 1129(a)(9)(A).

**\*11** It follows, then, that 28 U.S.C. § 1930(a)(6) establishes the obligation to pay and establishes a closed universe of potential quarterly fees from the commencement of the case until the case is converted or dismissed, as the plain language of the statute indicates. Once a case is commenced under Chapter 11, 28 U.S.C. § 1930(a) leaves nothing to be done except for the computation and payment of the quarterly fees under paragraph (6). These acts are purely administrative.

This interpretation finds support in two similar cases where the Supreme Court considered whether an intervening amendment to a statutorily prescribed interest rate was retroactive to cases pending before the date of enactment. In *U.S. v. Magnolia Petroleum Co.*, 276 U.S. 160 (1928), the Court considered whether a taxpayer who was assessed and who paid extra taxes was entitled to interest on its refund at the rate in force (1) when the refund was allowed (under the original act); or (2) from the date the taxes were originally paid (under the new, intervening statute). *See* *id.* at 160–63. The Court held that the operative language of both statutes was "upon allowance of ... a refund." Because Congress did not expressly state that the statute was intended to apply retroactively, the taxpayer was entitled to interest based upon the rate in effect when the refund was allowed; that is, the Court held the amendment did not apply retroactively to refunds allowed before the date of enactment of the amendment. *Id.* at 162–64. Notably, in this regard, the Court reasoned that after the triggering conduct—the allowance of the refund—"[c]omputation and payment were all that remained to be done." *Id.* at 162.

In *Kaiser Aluminum*, the Court reached a similar conclusion with respect to the construction of an amendment to 28 U.S.C. § 1961, which provides for postjudgment interest. *See* *Kaiser Aluminum*, 494 U.S. at 834–45. There, the Court held that the applicable rate of interest was the rate in effect on the date of entry of the judgment and, therefore, that the amended statute did not

apply retroactively to judgments entered before the effective date. As in *Magnolia Petroleum*, the Court in *Kaiser Aluminum* reasoned that, after the entry of judgment, all that remained was the calculation of the interest payment based upon the rate in effect on the date that judgment was entered. *See id.* at 839. "[O]n the date of judgment," the Court explained, "expectations with respect to interest liability were fixed, so that the parties could make informed decisions about the cost and potential benefits of paying the judgment or seeking appeal." *Id.*

Similar to the circumstances in *Magnolia Petroleum* and *Kaiser Aluminum*, here, once a Chapter 11 case is commenced, 28 U.S.C. § 1930(a)(6) leaves nothing to be done except the administrative tasks of calculating and paying the quarterly fee that is owed according to the fee schedule in effect on the petition date. Both the original version of 28 U.S.C. § 1930 (pre-2017 Amendment) and the statute as amended in 2017 indicate that two factors determine the amount of quarterly fees owed: (1) the length of time that payment of the quarterly fee obligation exists, which requires a starting point and an ending point; and (2) the schedule defining how the quarterly fee is to be calculated. *Cf. Kaiser Aluminum*, 494 U.S. at 838. Section 1930, originally and as amended, provides the starting point—the date that the case under Chapter 11 is commenced, 28 U.S.C. § 1930(a)—and the schedule of fees, *id.* § 1930(a)(6). It also provides the termination point: "a quarterly fee shall be paid ... for each quarter ... until the case is converted or dismissed." *Id.* Both versions of the statute further specify that a single applicable fee schedule shall be applied to a case commenced under Chapter 11. *Id.* ("[t]he fee shall be ....").

**\*12** Therefore, on the date that the Chapter 11 debtor commences its case, the debtor's expectations with respect to quarterly fee liability are fixed, which—crucially in the bankruptcy context—enables the debtor to make informed decisions about how to proceed in its Chapter 11 case.[36] *Cf. Kaiser Aluminum*, 494 U.S. at 839. The most logical reading of 28 U.S.C. § 1930, originally and as amended, is that the schedule of quarterly fees in any particular Chapter 11 case is determined as of the date that the case is commenced, and that fee schedule[37] applies for the duration of the case. *See* 28 U.S.C. § 1930(a)(6) (2012) (a quarterly fee "shall be paid ... until the case is converted or dismissed .... The fee shall be ...."). *Cf.* 28 U.S.C. § 1930(a)(6)(A) (2018) (same).

Consider 28 U.S.C. § 1930 (2012) from the viewpoint of a debtor filing a Chapter 11 petition in May 2016—like USA Sales. At that time, 28 U.S.C. § 1930 defined the following:

• the conduct that triggers its application—"commencing a case," *id.* § 1930(a);

• the cases to which the statute applies—"in each case under Chapter 11," *id.* § 1930(a)(6);

• the obligation—to pay "a quarterly fee" to the UST, *id.*;

• the duration of the obligation—"until the case is converted or dismissed," *id.*; and

• the substantive terms of the obligation—"[t]he fee *shall be*" at least "$325 for each quarter in which disbursements total less than $15,000," and, at most, "$30,000 for each quarter in which disbursements total more than $30,000,000," *id.* (emphasis added).

Finally, that statute provided that the fee would be payable "on the last day of the calendar month following the calendar quarter for which the fee is owed." *Id.*; *see also Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718, 1722 (2017) (explaining that the term "owed" in 15 U.S.C. § 1692a(6) is used as an adjective to describe the present state of a thing—a debt owed and collectible); *see also Mosaic*, 614 B.R. at 623.

Conversely, a party "commencing a case" under Chapter 11 on or after the date of enactment of the 2017 Amendment knows that, "[d]uring each of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund as of September 30 of the most recent full fiscal year is less than $200,000,000, the quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1 percent of such disbursements or $250,000." 28 U.S.C. § 1930(a)(6)(B) (2018). The durational limitation, "through [fiscal year] 2022," gives the new Chapter 11 debtor notice that, beginning on January 1, 2023, the quarterly fee payable to the UST will be calculated according to the fee schedule set forth in 28 U.S.C. § 1930(a)(6)(A). As in cases commenced before the enactment of the 2017 Amendment, the terms of the obligation to pay quarterly fees in a new Chapter 11 case are explicitly clear at the time the case is commenced.

Thus, 28 U.S.C. § 1930(a)(6), originally and as

amended in 2017, defines, at the time the Chapter 11 case is commenced, the range of potential quarterly fees that can be "owed" to the UST for the duration of the case. Once the case is commenced, there is nothing left to be done except to compute and pay the quarterly fee based upon the amount of total disbursements, pursuant to the fee schedule in effect on the petition date. *See* 📄 *Magnolia Petroleum*, 276 U.S. at 162 (amended statute did not apply retroactively because the conduct triggering the entitlement under the former act was already complete and only administrative tasks of computation and payment remained).

**\*13** Considering that "commencing a case" is the conduct that triggers liability to pay quarterly fees, the application of the 2017 Amendment to Chapter 11 cases that were pending on the date of enactment would be impermissibly retroactive because applying the 2017 Amendment to such cases would increase a Chapter 11 debtor's liability for past conduct. *See* 📄 *Landgraf*, 511 U.S. at 280. Because Congress did not explicitly state its intent for the 2017 Amendment to apply to cases pending on the date of enactment, there is a strong presumption against retroactive application of the statute to those cases. *See* 📄 *Kaiser Aluminum*, 494 U.S. at 853–56 (Scalia, J., concurring). Here, the plain text of the statute can reasonably be interpreted as applying only to cases commenced on or after the enactment date.

The Court respectfully disagrees with the reasoning of other courts, that interpreting 🚩 28 U.S.C. § 1930(a)(6)(B) as applying only to cases filed on or after the date of enactment would similarly mean that a debtor could not be subject to postpetition or postconfirmation tax increases (an example used by other courts). *See Buffets*, 979 F.3d at 376 (explaining that the 2017 Amendment is " 'more akin to taxes arising postconfirmation, or any similar post-confirmation expenses,' which are not retroactive even though changes in those expenses may disrupt the debtor's expectations" (quoting 📄 *Circuit City Stores*, 606 B.R. 260, 268–69 (Bankr. E.D. Va. 2019))). A debtor's obligation to pay taxes on property of the estate precedes, and exists independent of, a debtor's bankruptcy case, whereas the obligation to pay Chapter 11 quarterly fees arises only as a consequence of the debtor filing a petition under Chapter 11 of the Bankruptcy Code.

Indeed, 📄 11 U.S.C. § 503(b)(1)(B)(i), which governs the allowance of priority administrative expense claims, expressly provides for the allowance of "any tax" "incurred by the estate ... including property taxes for which liability is in rem, in personam, or both." The

operative term in 📄 11 U.S.C. § 503(b)(1)(B)(i) is "incurred," and nonbankruptcy law controls the nature and extent of the debtor's tax obligation. *See, e.g., In re Johnson*, 190 B.R. 724 (Bankr. D. Mass. 1995) (federal income taxes are incurred at time of accrual as opposed to time payment is due); *Matter of Columbia Gas System, Inc.*, 146 B.R. 114, (Bankr. D. Del. 1992) (whether a state tax debt is "incurred by the estate," for purposes of determining whether tax claim is entitled to administrative expense priority, is determined by asking whether, under state law, the state's right to payment arose prepetition or postpetition), *aff'd*, 📄 37 F.3d 982 (3d Cir. 1994), *cert. denied*, 514 U.S. 1082 (1995). Nonbankruptcy law is the source of a debtor's tax obligations in the first instance; bankruptcy law merely determines the priority of the tax claim in the order of payment. In contrast, the obligation to pay Chapter 11 quarterly fees arises as a consequence of the "commencement of a case" under Chapter 11 (*i.e.*, filing the bankruptcy petition)—it does not exist independent of the Bankruptcy Code. Thus, the obligation of a debtor to pay Chapter 11 quarterly fees is not analogous to a debtor's obligation to pay taxes on property of the estate under applicable nonbankruptcy law.

Moreover, the Court's interpretation of 🚩 28 U.S.C. § 1930 does not absolve debtors in cases pending before the enactment of the 2017 Amendment, like USA Sales, from paying quarterly fees. Those debtors still pay quarterly fees according to the fee schedule in effect on the date that their respective Chapter 11 cases were commenced.[38] A debtor that filed its Chapter 11 petition after the enactment date of the 2017 Amendment predictably is obligated to pay quarterly fees in accordance with the schedule set forth in the amended statute.

**\*14** Interpreting the 2017 Amendment to apply to Chapter 11 cases that were pending on the enactment date would also raise serious questions regarding the constitutionality of the Amendment, which the Court discusses in detail below. Accordingly, by interpreting the 2017 Amendment as applying only to cases filed on or after the enactment date, the Court avoids placing the constitutionality of the statute in doubt. *See* 📄 *Gomez*, 490 U.S. at 872; 📄 *Crowell*, 285 U.S. at 62; 📄 *Delaware & Hudson Co.*, 213 U.S. at 408.

Finally, the amendments to 🚩 28 U.S.C. § 1930(a)(6)(B) that the 2020 Act made significantly clarify the issues that arise with respect to the interpretation of the 2017 Amendment. Although the amendments that the 2020 Act made do not affect the Court's conclusion in this case, they merit a brief explanation. The 2020 Act amends

28 U.S.C. § 1930(a) "by striking paragraph (6)(B)" and inserting, in relevant part:

> (B)(i) During the 5-year period beginning on January 1, 2021, in addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, *in each open and reopened case under chapter 11 of title 11*, ... for each quarter (including any fraction thereof) until the case is closed, converted, or dismissed, whichever occurs first.

2020 Act § 3(d)(1) (emphasis added). The emphasized language modifies the "commencing" language in 28 U.S.C. § 1930(a) and expressly clarifies that pending cases are subject to the amended quarterly fees that are set forth in the following paragraphs (which have also been amended, *see* 2020 Act § 3(d)(1)).

In sum, the Court finds that 28 U.S.C. § 1930(a)(6)(B), as amended in 2017, does not apply to Chapter 11 cases that were commenced on or before the date of enactment. Accordingly, the UST improperly applied 28 U.S.C. § 1930(a)(6)(B) to USA Sales' pending Chapter 11 case.

## B. Constitutionality of 28 U.S.C. § 1930(a)(6)(B)

As discussed above, whether the 2017 Amendment applies to cases that were pending on the date of enactment—this Court finds it does not—appears to be an issue of first impression in the Ninth Circuit. The Court recognizes, however, that under the current prevailing view,[39] the Court would proceed to address the merits of USA Sales' constitutional challenges to the 2017 Amendment. Accordingly, putting aside for the moment the Court's conclusion that the 2017 Amendment does not apply to Chapter 11 cases pending on the enactment date, the Court will consider USA Sales' constitutional challenges to the 2017 Amendment as an alternative ground of decision.

### 1. The Bankruptcy Clause of the Constitution

USA Sales contends that even if Congress intended for the 2017 Amendment to apply to Chapter 11 cases that were commenced prior to its enactment, the fees assessed under the 2017 Amendment violate the Bankruptcy Clause of the Constitution.[40] USA Sales claims that because Chapter 11 debtors in UST districts are charged increased quarterly fees under the 2017 Amendment that are not charged to similarly situated Chapter 11 debtors in BA Districts, the 2017 Amendment is unconstitutionally non-uniform.[41]

**\*15** The Bankruptcy Clause empowers Congress to enact "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8; *see also St. Angelo*, 38 F.3d at 1529. "Bankruptcies" refers to the "subject of the relations between an insolvent or nonpaying or fraudulent debtor and his creditors, extending to his and their relief." *St. Angelo*, 38 F.3d at 1530 (quoting *Railway Labor Executives Ass'n v. Gibbons*, 455 U.S. 457, 466 (1982)). The Bankruptcy Clause requires bankruptcy laws to be geographically uniform. *Id.* at 1531. "A bankruptcy law may have different effects in various states due to dissimilarities in state law as long as the federal law itself treats creditors and debtors alike." *Id.* In other words, "the effect of a bankruptcy law may differ as long as the 'existing obligations of a debtor are treated alike by the bankruptcy administration throughout the country, regardless of the State in which the bankruptcy court sits.' " *Id.* (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 172 (1946)). "[A]lthough the Supreme Court has not clearly articulated a standard for scrutinizing Congress' decision to enact non-uniform bankruptcy laws," it is at least clear that, "to survive scrutiny under the Bankruptcy Clause, 'a law must *at least* apply uniformly to a defined class of debtors.' " *Id.* at 1532 (quoting *Gibbons*, 455 U.S. at 473) (emphasis in original).

As a threshold matter, the parties disagree regarding whether the Ninth Circuit's decision in *St. Angelo* is controlling in this case. USA Sales contends that *St. Angelo* is directly on point and, therefore, is outcome-determinative. According to USA Sales, the court in *St. Angelo* held that the prior version of 28 U.S.C. § 1930(a)(6) violated the Bankruptcy Clause because the quarterly fees assessed in UST Districts and in BA Districts were non-uniform, and Congress failed to provide any explanation for the disparity between the two programs.[42] The UST contends that *St. Angelo* is not controlling because the decision did not involve the

amendment presently at issue here and because the panel majority in *St. Angelo* did not strike down the quarterly fee statute as unconstitutional, but, rather, it held that § 317(a) of the Judicial Improvements Act of 1990 (the "1990 JIA"), Pub. L. No. 101-650, 101st Cong., 2d Sess. § 317(a), was unconstitutional.[43]

The answer to this question is nuanced. It is true, as USA Sales contends, that the panel majority in *St. Angelo* held that the disparate programs in UST Districts and BA Districts established by Congress, without justification, violated the Bankruptcy Clause. *St. Angelo*, 38 F.3d at 1533; *see also Buffets*, 979 F.3d at 376–78 (evaluating the 2017 Amendment under the Bankruptcy Clause); *MF Global*, 615 B.R. at 445–46 (same). But it is also true that *St. Angelo* is confined to the amendments made to 28 U.S.C. § 1930 under § 317(a) of the 1990 JIA and that the court expressly declined to strike down 28 U.S.C. § 1930. *See St. Angelo*, 38 F.3d at 1533. The majority in *St. Angelo* thought that by invalidating only § 317(a) of the 1990 JIA, while preserving 28 U.S.C. § 1930, it would "leave in place a uniform law governing bankruptcy throughout the nation." *St. Angelo*, 38 F.3d at 1533. After all, the majority reasoned, § 317(a) of the 1990 JIA, which extended the time for BA Districts to adopt the UST program, was the root cause of the non-uniformity problem, not the quarterly fee statute itself. *Id.*; *see also Buffets*, 979 F.3d at 383 (Clement, J., dissenting in part). In sum, *St. Angelo* is binding to the extent that it found that 28 U.S.C. § 1930 is a law on the subject of bankruptcies and, therefore, is subject to scrutiny under the Bankruptcy Clause, *see St. Angelo*, 38 F.3d at 1530–31;[44] however, *St. Angelo* is not controlling with respect to the question of whether the 2017 Amendment violates the Bankruptcy Clause.

**\*16** Having decided the extent to which *St. Angelo* is controlling, it is helpful to examine the amendments made to 28 U.S.C. § 1930(a)(6) after the *St. Angelo* decision and to consider how the quarterly fee program was administered in UST Districts and BA Districts in the intervening years before the 2017 Amendment.

In 2000, after *St. Angelo* was decided, Congress amended 28 U.S.C. § 1930(a) by adding paragraph (7), *see* Federal Courts Improvement Act of 2000, Pub. L. No. 106-518, § 105, 114 Stat. 2410, 2412, which provides that "[i]n districts that are not part of the United States trustee region ... the Judicial Conference of the United States may require the debtor in a case under Chapter 11 ...to pay fees equal to those imposed by paragraph (6) of [ 28 U.S.C.

§ 1930(a)]," 28 U.S.C. § 1930(a)(7).[45] Soon thereafter, the Judicial Conference exercised the authority granted to it by Congress and began to charge quarterly fees in BA Districts "in the amounts specified in 28 U.S.C. § 1930(a)(6), as those amounts may be amended from time to time." JUDICIAL CONFERENCE OF THE U.S., REPORT OF THE PROCEEDINGS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES: SEPT./OCT. 2001, at 45–46 (2001), https://www.uscourts.gov/sites/default/files/2001-09_0.pdf. Consequently, Chapter 11 debtors in both UST Districts and BA Districts were charged uniform quarterly fees, and the non-uniformity problem between the two programs identified by the court in *St. Angelo* seemed to be resolved. That is, until Congress enacted the 2017 Amendment.

After the enactment of the 2017 Amendment, beginning in the first quarter of 2018, qualifying debtors in UST Districts were assessed quarterly fees under amended 28 U.S.C. § 1930(a), whereas the Judicial Conference waited until September 2018 to adopt the increased fee schedule for Chapter 11 debtors in BA Districts. *See Buffets*, 979 F.3d at 372. Though, even then, the Judicial Conference applied the new fees only to cases in BA Districts "filed on or after October 1, 2018." *Id.*

Effectively, in contrast with debtors in UST Districts like USA Sales, a Chapter 11 debtor in a BA District that filed its bankruptcy petition "before the final quarter of 2018 does not owe increased fees no matter how long the case remains pending." *Id.* Thus, after the 2017 Amendment, the constitutional infirmity identified in *St. Angelo*, which had been dormant since the early 2000s, again became an active problem that harms Chapter 11 debtors in UST Districts. *Cf. Clinton Nurseries*, 608 B.R. at 116 ("[t]he very reason why 28 U.S.C. § 1930(a)(7) was enacted in the first place [was] to avoid the constitutional issue identified in [*St. Angelo*]").

**\*17** The dormancy of the constitutional problem for almost a quarter century does not excuse what is otherwise an unconstitutionally non-uniform system of quarterly fees. For the purpose of the 2017 Amendment, the relevant class of debtors is debtors in Chapter 11 cases. *See* 28 U.S.C. § 1930(a)(6)(A) (quarterly fees shall be paid "in cases under Chapter 11" of the Bankruptcy Code). The ensuing state of affairs after the enactment of the 2017 Amendment shows that, as applied, 28 U.S.C. § 1930(a)(6) is an unconstitutionally non-uniform law that results in a Chapter 11 debtor in a UST District—like USA Sales—being required to pay significantly higher

fees to the trustee administering its bankruptcy than an identically situated debtor in a BA District.[46] *See Buffets*, 979 F.3d at 383 (Clement, J., dissenting in part). And, as in *St. Angelo*, Congress still has not provided any justification for its decision to group Chapter 11 debtors into UST and BA Districts in the first instance.[47] *St. Angelo*, 38 F.3d at 1531–32. Congress' failure to provide any justification at all for enacting a non-uniform bankruptcy law means that, regardless of the standard of scrutiny under the Bankruptcy Clause,[47] Congress' "decision can only be considered to be irrational and arbitrary." *Id.* at 1532.

Furthermore, because the Judicial Conference's adoption of the 2017 Amendment applies only to cases filed on or after October 1, 2018, debtors in pending Chapter 11 cases filed before October 1, 2018, are still experiencing geographic discrimination without any explanation from Congress. Accordingly, the 2017 Amendment cannot constitutionally be applied to pending cases outside of BA Districts, and the 2017 Amendment remains unconstitutionally non-uniform as applied to pending cases.

The Court is not persuaded by the UST's argument, or, respectfully, by the reasoning of other courts, that the relevant class of debtors for the purpose of the 2017 Amendment is Chapter 11 debtors in UST districts.[48] *See Buffets*, 979 F.3d at 378–79; *Exide*, 611 B.R. at 37. Such a narrow construction of the statute fails to address why Chapter 11 debtors in UST Districts are required to use the UST in the first place, whereas debtors in BA Districts "get to use less-expensive Administrators." *See id.* at 383 (Clement, J., dissenting in part). Nor is the Court persuaded that, on its face, the 2017 Amendment uniformly applies to all Chapter 11 debtors, and, therefore, the consequent disparity between the fees assessed to debtors in UST Districts and in BA Districts is not a function of the law itself, but, rather, it is a mere a consequence of the Judicial Conference's delay in adopting the amended fee schedule.[49] *See Clinton Nurseries*, 608 B.R. at 113, 115–16; *Exide*, 611 B.R. at 38. In this regard, the UST contends that Congress' use of the word "may" in 28 U.S.C. § 1930(a)(7) was intended to be mandatory rather than permissive, and, thus, the Judicial Conference failed its mandatory obligation immediately to adopt the increased fee schedule. However, although the term "may" is sometimes used (sloppily) to signify a mandatory obligation, *see, e.g., Citizens & S. Nat'l Bank v. Bougas*, 434 U.S. 35, 38 (1977), Congress' use of the term "shall" in 28 U.S.C. § 1930(a)(6) is

unambiguously mandatory, which indicates that term "may" in the following paragraph, 28 U.S.C. § 1930(a)(7), is intended to be permissive, *see* SCALIA & GARNER, *supra*, at 112–15. In other words, "Congress required the new fees in the [UST] Districts but only allowed for their possibility in the [BA] Districts." *Buffets*, 979 F.3d at 378 n.10 (rejecting a similar argument by the UST). The decision of the Judicial Conference to delay its adoption of the 2017 Amendment further underscores the difference between the terms "may" and "shall." *Id.*

**\*18** Therefore, based upon the foregoing, the Court would hold that the 2017 Amendment and the division of the country into UST Districts and BA Districts violates the Bankruptcy Clause. Accordingly, the Court would order the UST to refund the excess quarterly fees paid by USA Sales under the unconstitutional amended fee schedule.

### 2. The Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment

USA Sales also challenges the constitutionality of the 2017 Amendment, as applied to pending Chapter 11 cases, under the Due Process Clause of the Fifth Amendment,[50] and the Equal Protection Clause of the Fourteenth Amendment.[51]

USA Sales recognizes that the 2017 Amendment must lack a rational basis to offend due process or equal protection,[52] and it acknowledges the difficulty of showing that Congress acted arbitrarily or irrationally under this test.[53] The Court concludes that if the 2017 Amendment applies retroactively to pending cases, then it survives rational basis review. Congress enacted the 2017 Amendment to address a shortfall in the UST Fund. *See Buffets*, 979 F.3d at 380–81. Furthermore, "[t]he fee increase is directly tied to the deficit, kicking in only if the balance is below $200 million and expiring by 2022. It is reasonable to have large debtors shore up the system's finances as their cases typically place greater burdens on the system." *Id.* at 380. Accordingly, Congress' purpose in enacting the 2017 Amendment was neither irrational nor arbitrary, and, to the extent that the 2017 Amendment applies retroactively, such application meets the requirements of due process. *See Buffets*, 979 F.3d at 375 (Chapter 11 debtors necessarily expect to pay quarterly fees in *some* amount).

Similarly, with respect to equal protection, if the 2017

Amendment is interpreted to apply retroactively, then it would follow that Congress had a legitimate purpose in implementing the fee in UST Districts immediately, with the expectation that the Judicial Conference would timely adopt the fee increase. On its face, the 2017 Amendment does not discriminate against similarly situated Chapter 11 debtors.

Therefore, the Court would find that the 2017 Amendment does not violate due process or equal protection.

#### C. Analysis of USA Sales' Claim for Attorney Fees
To the extent that USA Sales asserts a claim for attorneys' fees, that claim is barred by the doctrine of sovereign immunity. In the absence of a statute or contract providing otherwise, the default rule is that each litigant pays its own attorneys' fees. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). Here, 28 U.S.C. § 1930(a)(6) does not contain any authorization for the recovery of attorneys' fees. Accordingly, USA Sales is not entitled to recover attorneys' fees from the UST.

#### D. Right of USA Sales to a Refund
**\*19** In its most recent annual appropriation law, Congress authorized payments of refunds from (1) deposits to the UST Fund; and (2) annual appropriations for the necessary expenses of the UST Program. Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, div. B, tit. II, 133 Stat. 2317, 2398 (2019). The UST requests that the Court stay the enforcement of any judgment until the Government has exhausted all avenues of review or the Attorney General certifies that no further review will be sought. Although the Court finds that USA Sales is entitled to a refund of the excess Chapter 11 fees it paid as a consequence of the 2017 Amendment, pursuant to 28 U.S.C. § 2414 and Rule 62 of the Federal Rules of Civil Procedure, the resulting judgment against the United States is not deemed final until the Attorney General certifies that no appeal shall be taken or that no further review will be sought. 28 U.S.C. § 2414; *see also Dixon v. United States*, 900 F.3d 1257, 1268 (11th Cir. 2018); *Mosaic*, 614 B.R. at 625.

### V. CONCLUSION

Based upon the foregoing, the Court will **GRANT** the Motion of USA Sales, in part, and **DENY** its Motion, in part, to the extent that USA Sales seeks the recovery of its attorneys' fees. The Court will also enter judgment that USA Sales is entitled to a refund from the UST in the amount of $595,849. However, the Court will refrain from entering that judgment pending further proceedings.

The Court will **DENY** the Motion of the UST.

#### All Citations

Slip Copy, 2021 WL 1226369

### Footnotes

1      All references to the "Bankruptcy Code" shall refer to Title 11 of the United States Code.

2      *Accord In re Macomb Occupational Health Care, LLC*, 300 B.R. 270, 283 n.11 (Bankr. E.D. Mich. 2003).

3      Bankruptcy Judgeship Act of 2017 (the "2017 BJA"), Pub. L. No. 115-72, Div. B, § 1004(a), Oct. 26, 2017, 131 Stat. 1232 (codified as amended at 28 U.S.C. § 1930 (2018)).

4      A detailed analysis of the quarterly fees paid by USA Sales is set forth below. The parties agree that, for the first quarter of 2018 through the fourth quarter of 2019, USA Sales paid a total of $699,949 in quarterly fees.

5      *See* Def.'s Statement re Pl.'s Statement of Undisputed Facts ("Def.'s SDF") [ECF No. 32] ¶¶ 1 & 26.

6    *See* Compl. [ECF No. 1].

7    *See* Second Amend. Compl. (the "Amended Complaint") [ECF No. 14] ¶¶ 10–12.

8    *See id.* at ¶¶ 13–15.

9    Def.'s Mot. for Summ. J. (the "Defendant's Motion") [ECF No. 25].

10    Pl.'s Mot. for Summ. J. (the "Plaintiff's Motion") [ECF No. 26].

11    The Court considered the following papers: (1) the Amended Complaint; (2) Defendant's Motion (including its attachments); (3) Plaintiff's Motion (including its attachments); (4) Decl. of Lavar Taylor in Supp. of Plaintiff's Motion (including its attachments) (the "Taylor Decl.") [ECF No. 27]; (5) Pl.'s Opp'n to Defendant's Motion ("Plaintiff's Opposition") [ECF No. 28]; (6) Pl.'s Statement of Genuine Disputes of Material Facts in Supp. of Plaintiff's Opposition ("Pl.'s SDF") [ECF No. 29]; (7) Pl.'s Objs. to Evidence [ECF. No. 30]; (8) Def.'s Opp'n to Plaintiff's Motion (the "Defendant's Opposition") [ECF No. 31]; (9) Def.'s Statement re Pl.'s Statement of Undisputed Facts (the "Def.'s SDF") [ECF No. 32]; (10) Def.'s Reply in Supp. of Defendant's Motion (the "Def.'s Reply") [ECF No. 33]; (11) Pl.'s Reply in Supp. of Plaintiff's Motion (the "Pl.'s Reply") [ECF No. 34]; (12) Def.'s Notice of Suppl. Authority [ECF No. 35]; (13) Pl.'s Notice of Suppl. Authority [ECF No. 36]; (14) Pl.'s Suppl. Br. [ECF No. 43]; and (15) Def.'s Suppl. Br. [ECF No. 44]. The Court also conducted a hearing on the Motions on December 18, 2020.

12    *See generally* Plaintiff's Motion 22:1–26:20.

13    For the reasons explained herein, the Court will **DENY** the Motion of USA Sales to the extent that it requests an award of attorneys' fees.

14    The Court will **GRANT** the UST's Request for Judicial Notice in Supp. of Defendant's Motion (the "RJN") [ECF No. 25-2]. Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of the documents filed in support of the UST's Motion.

15    The omitted portions of 28 U.S.C. § 1930(a)(6), which are not applicable here, prescribe fees for quarters in which total disbursements range from: $15,000 to $75,000; $75,000 to $150,000; $150,000 to $225,000; $225,000 to $300,000; $300,000 to $1,000,000; $15,000,000 to $30,000,000; and over $30,000,000.

16    RJN, Ex. 9, at 246:14-15.

17    Def.'s SDF ¶ 1.

18    *Hirani v. USA Sales, Inc.*, Case No. CIVRS1204957 (San Bernardino Cnty. Sup. Ct.).

19    Pl.'s SDF ¶ 34.

20    *See* Def.'s SDF ¶¶ 1 & 26.

21    *See id.* at ¶¶ 6–10.

22    *Id.* at ¶¶ 11 & 13.

23    *See id.* at ¶¶ 14 & 25; Pl.'s SDF ¶¶ 51–54 & 60. During its bankruptcy case, USA Sales also reached a settlement of the *Hirani* lawsuit, which the bankruptcy court approved on January 24, 2017. *See* Pl.'s SDF ¶ 40; RJN, Ex. 8 (Bankruptcy Docket entries 100 & 125).

24  Def.'s SDF ¶ 15; *see also* USA Sales' Monthly Operating Reports [ECF No. 27-4] at ECF p. 161 (reflecting quarterly fees paid from 2016 through 2017). The Court notes that USA Sales' Monthly Operating Reports are attached as Exhibit 5 to the Taylor Declaration. Because Exhibit 5 is a voluminous exhibit, it was electronically filed in multiple parts, and each part was assigned an individual ECF Document number. Accordingly, citations to Exhibit 5 herein refer to the ECF document and page number(s).

25  *See* Def.'s SDF ¶ 19. The UST disputes the amount of fees assessed in the second and third quarters of 2019. This dispute is immaterial, however, because the parties agree that, for the first quarter of 2018 through the fourth quarter of 2019, USA Sales paid a total of $699,949 in quarterly fees.

26  *Id.* at ¶ 20.

27  *Id.* at ¶ 21.

28  *Id.* at ¶ 22.

29  Defendant's Motion 17:8–23.

30  *Id.* at 17:23–18:3.

31  Pl.'s Reply 4:12–5:2.

32  As explained in the discussion that follows, in this Court's view, the relevant conduct is the filing of the case, not the making of disbursements.

33  The Fifth Circuit rejected a similar argument in *Buffets*, holding instead that Congress' amendments to Chapter 12 of the Bankruptcy Code did not support a negative inference because the legislation addressed different subjects. *Buffets*, 979 F.3d at 375 n.5. This Court respectfully disagrees. The 2017 Amendment and the amendments to Chapter 12 of the Bankruptcy Code were both part of the same legislation; each was an amendment to laws on the subject of bankruptcy; and both amendments affected a debtor's relationship with its creditors. *Cf.* *Martin v. Hadix*, 527 U.S. 343, 356–57 (1999) (discussing when "negative inference" arguments are persuasive). Thus, Congress' decision to include explicit language prescribing the reach of the amendments to Chapter 12 of the Bankruptcy Code gives rise to a negative inference, albeit not a dispositive one, that Congress did not intend the 2017 Amendment to be applied retroactively to disbursements in pending cases.

34  Although the 2020 Act is illustrative of the first prong of the retroactivity analysis, it has no bearing on USA Sales (because its bankruptcy case was dismissed in 2019), nor does the 2020 Act affect the Court's analysis of the text of the 2017 Amendment, other than to provide a point of reference. Although neither party raises the doctrine of mootness, the Court finds that the 2020 Act does not render this case moot because USA Sales was assessed the increased fees under the 2017 Amendment *during the pendency* of its bankruptcy case, which has since been dismissed. The question in this action is whether the 2017 Amendment was properly applied to USA Sales' Chapter 11 case. If not, then USA Sales is entitled to recover the fees that the UST improperly assessed. *Cf.* *Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1181 (9th Cir. 2006) (when a statutory repeal or amendment extinguishes the controversy, the case is moot).

35  As explained in section IV.B, *infra*, the Ninth Circuit has previously held that 28 U.S.C. § 1930(a) is a law on the subject of bankruptcies. *See* *St. Angelo*, 38 F.3d at 1529 & 1533.

36  Similarly, the fixed nature of the quarterly fee obligation enables a prospective Chapter 11 debtor to make an informed decision regarding whether to commence a case under Chapter 11 in the first instance (*i.e.*, to determine whether the prospective debtor can afford to continue its operations while in Chapter 11).

37    That is, the fee schedule in effect on the petition date.

38    Moreover, Congress explicitly expressed its intent for the 2020 Amendment to apply retroactively to pending cases. Thus, the interpretive issue addressed by the Court in this opinion does not arise with respect to Chapter 11 cases that are currently pending (unlike USA Sales' bankruptcy case).

39    That is, the interpretation that 28 U.S.C. § 1930(a)(6)(B) is not impermissibly retroactive because it applies prospectively to disbursements in cases under Chapter 11 including cases pending on the date of enactment.

40    Plaintiff's Motion 22:22–24:8. USA Sales references both the Tax Uniformity Clause, U.S. Const. art. I, § 1, and the Bankruptcy Clause, U.S. Const. art. I, § 8. USA Sales interchangeably refers to the latter as the "Bankruptcy Uniformity Clause." *See* Plaintiff's Motion 23:13; Plaintiff's Opposition 9:7. The Ninth Circuit referred to the Bankruptcy Clause as the "Uniformity Clause." *See* *St. Angelo*, 38 F.3d at 1533. For the purpose of this analysis, the Court adopts the term the "Bankruptcy Clause."

41    Plaintiff's Motion 22:22–24:8.

42    *Id.* at 23:13–22.

43    Defendant's Opposition 16:3–18:10.

44    Because the Court finds that the Ninth Circuit's decision in *St. Angelo* is controlling with respect to the applicability of the Bankruptcy Clause to 28 U.S.C. § 1930, the Court need not address USA Sales' arguments regarding whether 28 U.S.C. § 1930 violates the Tax Uniformity Clause, U.S. Const. art. I, § 1.

45    Congress' decision to amend 28 U.S.C. § 1930(a) to add paragraph (7) seems to conflict with the Ninth Circuit's expectation in *St. Angelo* that striking down § 317(a) of the 1990 JIA would result in BA Districts becoming part of the UST program. *See* *St. Angelo*, 38 F.3d at 1533. As explained below, the addition of paragraph (7) failed to remedy the root cause of the constitutional infirmity identified in *St. Angelo*—the establishment of two separate programs in UST Districts and BA Districts, where BA Districts are not required to assess the same Chapter 11 fees on the same terms as in UST Districts.

46    Yet again, the amendments made by the 2020 Act are noteworthy. In addition to the amendments previously discussed, the 2020 Act amended 28 U.S.C. § 1930(a)(7), which governs the quarterly fees in BA Districts, by striking "may" and inserting "shall." 2020 Act § 3(d)(2). This simple amendment helps to clarify the constitutional uniformity problem—with respect to Chapter 11 cases that are currently pending—by making it mandatory for the Judicial Council to require Chapter 11 debtors in BA Districts to pay quarterly fees equal to those imposed by 28 U.S.C. § 1930(a)(6). However, it remains unclear to which cases the Judicial Council will apply the 2020 Act. In other words, if the Judicial Council applies the new fees only to cases filed on or after the effective date of the 2020 Act (as the Judicial Council did with the 2017 Amendment), then the constitutional non-uniformity problem will persist.

47    As the court in *St. Angelo* observed, "the Supreme Court has not clearly articulated a standard for scrutinizing Congress' decision to enact non-uniform bankruptcy laws." *St. Angelo*, 38 F.3d at 1532 (footnote omitted).

48    Defendant's Motion 28:1–30:2; Defendant's Opposition 14:20–16:2.

49    Defendant's Opposition 18:11–20:5.

[50]    Plaintiff's Motion 24:9–25:25. It is unclear whether USA Sales intends to assert a takings claim under the Fifth Amendment, because USA Sales' briefing on this point is rather thin. Nevertheless, to the extent that USA Sales intends to mount a takings challenge, the Court would find that the 2017 Amendment passes constitutional muster. *See Buffets*, 979 F.3d at 381 (rejecting takings claim).

[51]    Plaintiff's Motion at 26:1–20.

[52]    *See id.* at 24:13–16 (citing  *United States v. Carlton*, 512 U.S. 26 (1994) (applying rational basis test)); *id.* at 26:10–11 (acknowledging that equal protection claim is subject to rational basis review).

[53]    *See id.* at 24:19–21.

---

**End of Document**                                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---